# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

MATTHEW L. HALL,                    :
                                    :
     Plaintiff,                   :
                                    :
v.                                  :          CASE NO.: 1:15-CV-189 (LJA)
                                    :
DOUGHERTY COUNTY SCHOOL             :
SYSTEM,                             :
                                    :
     Defendant.                   :
_____ :

## ORDER

    Before the Court is Defendant's Motion for Summary Judgment (Doc. 12).[1] For the following reasons, Defendant's Motion is **GRANTED**.

## BACKGROUND[2]

    Defendant Dougherty County School System hired Plaintiff Matthew Hall, a white male, as a teacher on July 31, 2013. (Doc. 16-1, ¶¶ 1-2). Plaintiff was assigned to teach at Albany Early College. *Id.* at ¶ 2. Plaintiff was the only white male teacher at Albany Early College for the 2013-2014 and 2014-2015 school years. *Id.* at 64. Barbara Harvey was the Principal and Cartisha Lewis was an administrative assistant. *Id.* at ¶ 3. Harvey and Lewis are both black females. *Id.* at ¶ 30.

---

[1] Defendant originally filed a Motion for Summary Judgement at Doc. 10, and amended it at Doc. 12 on the same day. When the Court refers to "Defendant's Motion," both Doc. 10 and Doc. 12 are included.

[2] The relevant facts are derived from the Complaint (Doc. 1), Defendant's Answer to the Complaint (Doc. 5), Defendant's Statement of Undisputed Facts (Doc. 12-1), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. 16-1), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## I. <u>2013-2014 School Year</u>

On August 20, 2013, Plaintiff was diagnosed with Trigeminal Neuralgia, a condition that causes severe pain in the head and the jaw. Plaintiff informed both Harvey and Lewis of his diagnosis. (Doc. 16-3, ¶ 5). After informing them of the diagnosis, Plaintiff claims that Harvey and Lewis "began a campaign of harassment and abuse" against him. (Doc. 16-1, ¶ 27). The alleged harassment consisted of:

- "General treatment," including not being told hello in the morning and the way Defendants "looked at" Plaintiff in meetings (Doc. 16-4 at 58:2-5, 11-15)

- A comment Harvey made during a faculty meeting about being treated differently as a female (*Id.* at 74:6-10)

- Lewis asking Plaintiff "What are you doing up here using the bathroom during transition?" when Plaintiff went to use the bathroom in the front office during class transition (*Id.* at 58:6-10)

- "Having stuff said" to him while heating up his food (*Id.* at 59:3-4)

- "Belligerent conversations" when called into Harvey's office (*Id.* at 59:4-5)

- Lewis asking Plaintiff "What do you want me to do about it?" when he called in sick (*Id.* at 18:6-9)

- Being reprimanded for not doing "something that was associated with a particular extra-curricular activity with students" (*Id.* at 76:21-25)

- Notifying Harvey that he needed to leave work at 3:45 p.m. for a doctor's appointment, but not being allowed to leave until 4:00 p.m. (Doc. 16-1 ¶ 4)

Plaintiff did not observe any other employees taking sick leave or how Harvey responded to their requests. *Id.* at 19:11-20:19.

## II. <u>2014-2015 School Year</u>

During the 2013-2014 school year, Plaintiff taught Economics and American Government. *Id.* at 23. At the start of the 2014-2015 school year, Plaintiff was assigned to teach Psychology. *Id.* at ¶ 8. Plaintiff learned of his assignment after the school year began from his students rather than from the school's administration. (Doc. 16-3, ¶ 19). Accordingly, Plaintiff was not able to properly prepare or obtain appropriate materials to

teach the psychology course. *Id.* After learning that Plaintiff had been unaware of his assignment, Harvey requested a meeting to discuss the class. (Doc. 16-1, ¶ 9). Plaintiff responded to Harvey's request with an e-mail stating that, while he was surprised to learn of the assignment, he would teach the class to the best of his ability and did not express any reservations. *Id.*

Around August 14, 2014, Lewis came to Plaintiff's classroom and informed him that she was checking the phone extensions. *Id.* at ¶ 11. She asked him to dial Harvey's extension number. *Id.* Harvey answered the phone, confirmed that they were checking phone extensions, and then told Plaintiff that he "needed to be doing his job" because she "walked by his room and it looked like he wasn't doing what he was supposed to be doing." *Id.* Plaintiff never heard Harvey telling other teachers that they needed to be doing their jobs nor did he hear other teachers complain about similar comments. *Id.* at ¶ 12. Although Plaintiff does not specify what he said or what conduct he was referring to, Plaintiff complained internally to the Assistant Principal about the treatment he received from Harvey and Lewis. *Id.* at ¶ 39.

Plaintiff sought psychological treatment because of "Harvey and Lewis' harassment and abuse" and was evaluated on August 18, 2014. *Id.* at ¶¶ 13, 46. The psychologist recommended that Plaintiff take sick leave for the remainder of the week, August 18-22, 2014. *Id.* Harvey approved the leave and requested medical documentation. (Doc. 11-6). On Sunday, August 24, 2014, the psychologist sent Plaintiff an e-mail recommending that his excused medical leave be extended for an additional week, through August 29, 2014. (Doc. 16-1 at ¶ 14). Plaintiff notified Harvey of this at 10:25 p.m. on August 24, 2014 via e-mail. *Id.* The next morning, Harvey responded to Plaintiff's e-mail with the following:

> I regret to hear that you are still mentally not feeling well, but know this is extreme late notice of [sic] another week absence your teaching position. As I attempt to surmise your circumstances, please understand my position in the matter. I am concerned that you have not called to communicate the severity of your situation. I am equally concerned of your -untimely notification. I have not received your first medical excuse which you indicated was faxed to me on 8/18/14 and for this reason I am copying Dr. Young, Human Resource Director and Mr Jack Willis, Asst Superintendent. To prevent abandonment of employment, documentation of medically required absence must be provided today from your attending physician.

Otherwise, I will have no recourse but to begin this process. I do not want to assume the worst or exasperate your mental status but I really need to speak with you about this situation and ask that you call me. Again, I really want to understand and do what is in the best interest for you and our students. I look forward to hearing from you today.

(Doc. 11-6). Plaintiff also informed DCSS Superintendent David Mosely of his need for medical leave on August 24, 2015, and sent Mosely medical documentation of his mental condition. (Docs. 16-3, ¶¶ 26-27; 16-5). Plaintiff did not return to work, and subsequently sought to take FMLA leave for his mental condition.

On August 25, 2014, Assistant Superintendent Jack Willis called Plaintiff in response to messages Plaintiff left with Mosley's secretary. (Doc. 16-1, ¶ 15). Plaintiff told Willis that he would like to speak with Mosley to make "lawfully protected disclosures." *Id.* Willis told Plaintiff that Mosley would not be back in the office until September 2, 2014. *Id.* On September 2, 2014, Mosley e-mailed Plaintiff to indicate that he was back in the office and available if Hall would like to speak with him. *Id.* at ¶ 16. Plaintiff responded with the following by e-mail:

I am still under the weather but I do indeed want to meet with you. As you may already know I have requested the services of legal counsel through the Professional Association of Georgia Educators (PAGE). I have been assigned an attorney in the area and spoke with them briefly this morning on the phone about contacting the DCSS Attorney Tommy Coleman and setting up the conference. The conversation and request I made on the phone with counsel was done prior to receiving your message where you stated that you were back in the office today. I am prepared to meet with you but given the circumstances and the events that have unfolded over the last two weeks I am afraid that I will not be able to meet with you alone. In other words, I would like to have legal representation and/or an advocate/witness with me when any meeting does ensue. I will be in contact with the attorney that has been assigned to me today to see when they would be able to be in attendance and will be back in touch with you as soon as possible.

(Doc. 11-7).

On September 18, 2014, Plaintiff sent Mosely an e-mail, in which he made what he referred to as "lawfully protected disclosures," complaining of "discrimination via personal harassment, intentional discrimination, workplace bullying, intimidation on the job, nepotism on the job site between two related persons collectively acting together thus producing a

hostile work environment, and as it pertains to gender, race, disability, and retaliation." (Doc. 16-7). The e-mail also indicated that he sent his FMLA paperwork to the DCSS benefits office on September 18, 2014, and that he sought FMLA leave retroactive to September 2, 2014. *Id.* Plaintiff states that he received an e-mail on September 25, 2014 from Shirley Lilly, the DCSS Leave Clerk, in which she said that she "received paperwork…(the medical certification form and short term disability form-which I will file for you.)" (Doc. 11-9 at 1).

Plaintiff's FMLA leave was approved through December 2, 2014. (Docs. 16-4 at 45-46; Doc. 12-1, ¶ 18). Plaintiff, however, was not informed that his leave had been approved until he called the DCSS Leave Clerk, Ms. Lilly, on October 29, 2014. Ms. Lilly confirmed, during a phone conversation with Plaintiff, that his leave was in effect through December 2, 2014. (Doc. 16-4 at 45-46). Despite this, Plaintiff submitted a ten page document to DCSS entitled "Constructive Discharge/ Wrongful Termination," in which he formally resigned from his position because his complaints of discrimination and harassment had "fallen on deaf ears" and he could "no longer tolerate the employment scenario and conditions." (Doc. 16-18 at 10). Plaintiff explained that, despite being told that his leave was approved, he did not trust that assurance because of the minutes he discovered from a DCSS board meeting held on October 6, 2014. (Doc. 16-9). Attached to the minutes of the meeting was a memorandum by Mosley recommending staff for hire. *Id.* at 4. On the memorandum, John Tibbits was listed as a new hire for a position teaching Economics/ American Government to replace Matthew Hall. *Id.* Also on this memorandum was a list of employees on leave, which did not include Plaintiff. *Id.* Plaintiff was at no time informed that his employment had been terminated. (Doc. 16-1, ¶ 21).

## PROCEDURAL HISTORY

On December 1, 2015, Plaintiff commenced this action against Defendant. (Doc. 1). Defendant moved for summary judgment on December 15, 2016 (Doc. 12), and Plaintiff responded on January 19, 2017. (Doc. 16). Defendant timely replied on February 2, 2017. (Doc. 17). As such, Defendant's Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) *citing Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24.

Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the

nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) *quoting* <u>*Macuba v. Deboer*</u>, 193 F.3d 1316, 1322 (11th Cir. 1999) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

## **DISCUSSION**

Plaintiff alleges the following claims: (1) race discrimination; (2) gender discrimination; (3) disability discrimination; (4) hostile work environment; (5) retaliation; and (6) violations of the Family Medical Leave Act (FMLA).

### I. **Discrimination**

Title VII makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Americans with Disabilities Act (ADA) makes it unlawful for employers to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[3] Plaintiff argues that Defendant violated Title VII and the ADA by terminating Plaintiff's employment because of his race, gender, and nerve condition. Disparate treatment claims under Title VII and the ADA require proof of discriminatory intent either through direct or circumstantial evidence. *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) (addressing Title VII claims); *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (addressing ADA claims). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference

---

[3] Plaintiff also brings his disability claim under the Rehabilitation Act, 29 U.S.C. § 794, which prohibits discrimination by employers receiving federal funds. Rehabilitation Act cases are governed by the same standards as ADA cases, so the Court will not separately address Plaintiff's claims under the Rehabilitation Act. *See Musgrove v. Vilsack*, 173 F.Supp.3d 1337, 1345 (M.D. Ga. 2016); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

or presumption." *Joe's Stone Crab*, 220 F.3d at 1286. Plaintiff presented no direct evidence in this case.

When there is no direct evidence of discrimination in Title VII and ADA cases, a plaintiff may prove discrimination through circumstantial evidence, using the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or the mosaic theory set forth in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011). *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (addressing Title VII claims); *Wascura*, 257 F.3d at 1242 (addressing ADA claims). To establish a prima facie case for Title VII claims under the *McDonnell-Douglas* analysis, Plaintiff must show that: (1) he is a member of a protected class; (2) he was subject to adverse employment action; (3) his employer treated similarly situated white employees more favorably; and (4) he was qualified to do the job. *McCann*, 526 F.3d at 1373. To establish a prima facie case for ADA claims under the *McDonnell-Douglas* analysis, Plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as a result of his disability. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). To establish the third element in ADA cases, an individual must show "that he has suffered an adverse employment action because of his disability" and that "his employer treated similarly situated employees outside of his protected class more favorably than he was treated." *Id.*; *Wolfe v. Postmaster General*, 488 F. App'x. 465, 468 (11th Cir. 2012). With respect to both Plaintiff's Title VII claims and his ADA claims, the parties do not dispute that Plaintiff was part of a protected class, disabled, or that he was qualified for his position. At issue in both the Title VII claims and the ADA claims is whether or not Plaintiff was subject to an adverse employment action and whether he was treated less favorably than similarly situated individuals.

To establish an adverse employment action, the plaintiff must either show: 1) an "ultimate employment decision[] such as termination, failure to hire or demotion;" or 2) conduct falling short of an ultimate employment decision that "in some substantial way, alter[s] the employee's compensation, terms, conditions, or privileges of employment, deprive[s] him or her of employment opportunities, or adversely affect[s] his or her status as

an employee." *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008). Plaintiff argues that he suffered an adverse employment action by being "constructively discharged" from DCSS.

Plaintiff has not set forth evidence sufficient to establish that he was constructively discharged. "A constructive discharge occurs when a discriminatory employer imposes working conditions that are so intolerable that a reasonable person in the employee's position would have been compelled to resign." *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003). "Mere suspicion of an unsubstantiated plot is not an intolerable employment condition," *id.* at 978, and "Title VII does not protect employees from stressful workplace environments." *Medearis v. CVS Pharmacy*, 646 F. App'x 891, 898 (11th Cir. 2016). In *Palmer v. McDonald*, the Eleventh Circuit found that the plaintiff had not been constructively discharged when the "supervisor hastily gave verbal instructions, yelled at him, scolded him, laughed out loud by his cubicle, and did not help him first thing in the morning" 624 F. App'x 699, 704 (11th Cir. 2015). Similarly, the Eleventh Circuit concluded that the plaintiff in *Medearis v. CVS Pharmacy* had not been constructively discharged when his supervisor laughed at his complaints about the workplace and told him on one occasion that he would be fired within the year. 646 F. App'x 891, 898 (11th Cir. 2016). In contrast, the court held that the plaintiffs in *Akins v. Fulton County, Georgia* were constructively discharged when their work duties were removed, they were excluded from meetings, their supervisor instructed coworkers not to talk to them, they were required to publically display their time sheets, and the supervisor accused one of them of engaging in illegal behavior. 420 F.3d 1293, 1302 (11th Cir. 2005).

Similar to *Palmer* and *Medearis*, Plaintiff complains that Harvey and Lewis scolded him, laughed at him, and made his working atmosphere unpleasant. However, Plaintiff has presented no evidence that rises to the level of having his work duties removed, being publically shamed, or being excluded from workplace meetings. Although "employees may be constructively discharged by a demeaning demotion or transfer," *Riley v. Birmingham Bd. of Educ.*, 154 F. App'x 114, 117 (11th Cir. 2005), Plaintiff's reassignment to teaching psychology is insufficient to the meet the constructive discharge standard because Plaintiff kept the same job title and general teaching duties. *See Washington v. Kroger Co.*, 218 F. App'x

822, 827 (11th Cir. 2007) (finding that plaintiff was not constructively discharged when transferred from meat department to bagging department in part because job title as store clerk remained the same); *Booth v. Houston*, 58 F.Supp.3d 1277, 1295 (M.D. Ala. 2014) (finding that plaintiff was constructively discharged when "supervising assistant district attorney with almost a decade of experience prosecuting felony cases" was demoted to "part-time, non-supervisory prosecutorial work in juvenile court").

Moreover, Plaintiff's conclusion that he would be fired based on Harvey's e-mail, the lack of investigation of his complaints, and the hiring of Tibbits was unreasonable, and thus does not support his alleged constructive discharge. "Part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987). Furthermore, "the possibility that a plaintiff may not remain employed is not itself enough to place a reasonable person in the position of 'quit or be fired.'" *Rowell v. BellSouth Corp.*, 433 F.3d 794, 806 (11th Cir. 2005). Even if the fear of imminent dismissal were a basis for constructive discharge, Plaintiff has not set forth any objective evidence supporting his assumption that he would be terminated at some point in the near future. In stark contrast to his assumptions are the legal protections for teachers encoded in Georgia law. Georgia law requires written notice of the charges for discharge of a teacher to be given ten days before a date set for a termination hearing. O.C.G.A. § 20-2-940. Plaintiff had sought legal representation and was assigned a representative from the Professional Association of Georgia Educators, who certainly would have been aware of this statute. Accordingly, it was unreasonable for Plaintiff to resign in anticipation of a summary termination. Furthermore, before resigning, Plaintiff confirmed with Ms. Lilly that his FMLA leave had been approved. Given the statutory notice requirement and Plaintiff's confirmation of his approved leave, it was not reasonable to assume that, because of an e-mail from the school principal asking for medical documentation or a reference to the hiring of a new teacher,[4] Plaintiff was about to be fired. *See Foshee v. Ascension Health-IS, Inc.*, 384 F. App'x 890, 892 (11th Cir. 2010) (finding no constructive discharge when the employer posted the plaintiff's position and refused to meet

---

[4] Although Defendant does not explain why Tibbits was hired, given that Plaintiff taught psychology at the time, there is not enough evidence that Tibbits was hired to replace Plaintiff as an American Government and Economics teacher.

with her). Plaintiff also had no indication or evidence that he would not be reinstated to an equal position when he returned from FMLA leave. *See Garner*, 807 F.2d at 1539. Accordingly, Plaintiff has failed to establish that he was constructively discharged.

Even had Plaintiff established that he was constructively discharged, Plaintiff has still failed to establish a prima facie case under Title VII and the ADA because he did not prove that he was treated differently from similarly situated black, female, or able-bodied individuals. Plaintiff does not identify any individual comparators. Rather, he purports to identify all other teachers at Albany Early College as comparators because he was the only white male teacher. Such general allegations are not sufficient. In *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1192 (11th Cir. 2016), the Court held that "the plaintiff and the employee they identify as a comparator must be similarly situated in all relevant respects. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Plaintiff has not provided sufficient, or even any, specific details to allow the Court to determine if the comparators are nearly identical. Moreover, with regard to his claim that he was discriminated against based on his disability, Plaintiff does not specify whether all other teachers were able-bodied. Nor does Plaintiff submit any evidence that anyone was granted leave or benefits in circumstances where he was not. That Plaintiff states that he never saw or heard of anyone being subject to the same treatment is not proof that it did or did not happen.

Furthermore, Plaintiff's broad comparison of himself with every other teacher at Albany Early College is insufficient to show that he was similarly situated to any individual as the Eleventh Circuit has held that individuals are not similarly situated when they both engaged in misconduct but the degree of misconduct varied or when the employees had significantly different lengths of relevant experience in their positions. *See Burke-Fowler*, 447 F.3d at 1325; *Beard v. 84 Lumber Co.*, 206 F. App'x 852, 857 (11th Cir. 2006). Without more detail about individual teachers, it is impossible for the Court to determine that Plaintiff was similarly situated to any of them. Given this lack of specificity, combined with Plaintiff's admission that he never personally heard Harvey reprimanding other teachers and was not

aware of how Harvey responded to other teachers' requests for sick leave, Plaintiff has failed to identify any comparators.

Even though Plaintiff has failed to establish a prima facie case of discrimination using the *McDonnell-Douglas* framework, the framework is not the "*sine qua non*" for a plaintiff to survive a summary judgment motion." *Smith*, 644 F.3d 1321, 1328 (11th Cir. 2011). "Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* The Eleventh Circuit recognizes at least three categories of circumstantial evidence that may be relevant: "(1) suspicious timing, ambiguous statements, similar behavior directed at other members of the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of those outside the protected class; and (3) pretext in the employer's justification." *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 976 (11th Cir. 2014).

For example, the Eleventh Circuit has found sufficient circumstantial evidence where derogatory comments were made about women and specific male employees were not disciplined for using the same language that resulted in disciplinary action against the female plaintiff. *See Smith*, 588 F. App'x at 976. The only piece of circumstantial evidence that Plaintiff identifies relating to race, gender, or disability is Harvey's comment that she had, in the past, been treated differently as a woman. "[O]utside of his own conclusory say-so," Plaintiff fails to tie this one comment, made to a group of teachers at a faculty meeting, to any intent to discriminate against him personally or against other male teachers. *Flowers*, 803 F.3d at 1137. Furthermore, Plaintiff does not identify any statements or actions by Harvey, Lewis, or any other DCSS employee related to his race or nerve condition. Accordingly, Plaintiff has failed to establish discriminatory intent and summary judgment on Plaintiff's claims of race, gender, and disability discrimination is appropriate.

## II.  <u>Hostile Work Environment</u>

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). To establish a hostile work environment claim, the plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee…;(4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under a theory of vicarious or direct liability." *Miller*, 277 F.3d at 1275.

Plaintiff has failed to show that the alleged harassment by Harvey and Lewis was based on his race or gender. Plaintiff cannot identify one instance, other than Harvey's comment about being treated differently as a woman, that was in any way related to Plaintiff's identity as white or male. Thus, Plaintiff has failed to establish a prima facie case of hostile work environment. *See Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 F. App'x 586, 602 (11th Cir. 2008) (holding that the plaintiff failed to establish a prima facie case of hostile work environment based upon her race and national origin when no comments were made about her race or national origin).

## III.  <u>Retaliation</u>

Title VII prohibits discrimination against employees who have "opposed any practice made an unlawful employment practice by this subchapter" or who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Plaintiff must show that: "(1) [he] participated in a statutorily protected activity; (2) [he] suffered a materially adverse employment action; and (3) there is a causal connection between the two." *Evans v. Books-A-Million*, 762 F.3d 1288, 1298 (11th Cir. 2014). Plaintiff engaged in statutorily protected activity by seeking FMLA leave. However, as discussed

above, Plaintiff's cannot show that he suffered "a materially adverse employment action." The same standard for adverse employment actions is used in both Title VII discrimination and retaliation claims. *Crawford*, 529 F.3d at 970-71. Accordingly, summary judgment on Plaintiff's claim for retaliation is appropriate. *See Durley v. APAC, Inc.*, 236 F.3d 651, 657-58 (11th Cir. 2000); *Beltrami v. Special Counsel, Inc.*, 170 F. App'x 61, 62-63 (11th Cir. 2006).

## IV.     **Family Medical Leave Act**

The Family Medical Leave Act (FMLA) grants twelve weeks of unpaid leave for any eligible employee suffering from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "To protect this right, the FMLA allows employees to bring a private cause of action for interference or retaliation." *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014). Plaintiff claims both that Defendant interfered with his right to be restored to the position of employment held by the employee when his FMLA leave commenced and that Defendant retaliated against him "when he was replaced and ultimately terminated." (Doc. 16 at 13-14).

### a.  **Interference**

In order to state a claim for interference, an employee need only demonstrate "that she was denied a benefit to which she was entitled under the FMLA and that she has been prejudiced by the violation in some way." *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014). An employee "does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). Plaintiff alleges that Defendant denied his substantive FMLA right to reinstatement.

Employees on FMLA leave have the right, on return from such leave, "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 US.C. § 2614(a)(1); *Strickland*, 239 F.3d at 1208. Though Plaintiff did not receive written notice, he confirmed that his approved FMLA leave extended through December 2, 2014. Yet Plaintiff resigned on October 31, 2014. Having resigned more than a month before his leave expired, Plaintiff

cannot prove that Defendant denied him reinstatement to his position or an equivalent position. That minutes from a board meeting indicate the hiring a replacement to teach Plaintiff's classes does not indicate whether such a replacement was permanent, or whether Plaintiff would be assigned to an equivalent position upon his return. Accordingly, summary judgment is appropriate on Plaintiff's claim for interference under the FMLA.

### b. Retaliation

To establish retaliation under the FMLA, Plaintiff must either present direct evidence of the employer's retaliatory intent, or use circumstantial evidence according to the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Strickland*, 239 F.3d at 1209. Plaintiff did not present any direct evidence of retaliation. Therefore, to make a prima facie case of retaliation, Plaintiff must establish that 1) he engaged in a statutorily protected activity; 2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Id.* Plaintiff engaged in a statutorily protected activity by taking FMLA leave; however, as discussed above, Plaintiff has failed to set forth evidence sufficient to establish constructive discharge. Accordingly, as Plaintiff does not identify any other adverse employment decisions, summary judgment is appropriate on Plaintiff's claim of retaliation under the FMLA.


### CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 12) is **GRANTED**.


**SO ORDERED**, this  17th  day of   August   2017.

           /s/ Leslie J. Abrams
     **LESLIE J. ABRAMS, JUDGE**
     **UNITED STATES DISTRICT COURT**

15